**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **STRIKEFORCE TECHNOLOGIES, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GEMALTO, INC., GEMALTO N.V., and SAFENET, INC.,**<br><br>**Defendants.** | Civil Action No. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

StrikeForce Technologies, Inc. (hereinafter "Plaintiff" or "StrikeForce") files this Complaint for patent infringement against Gemalto, Inc., Gemalto N.V., and SafeNet, Inc. (hereinafter, collectively, "Defendant" or "Gemalto") for infringement of U.S. Patent Nos. 8,484,698 and 8,713,701 (collectively, "Asserted Patents"). On personal knowledge as to Plaintiff's own actions, and on information and belief as to the actions of others, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action by StrikeForce to end Gemalto's unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of products and methods in the U.S. incorporating StrikeForce's patented inventions.

2. Plaintiff StrikeForce seeks monetary damages, pre-judgment and post-judgment interest, and injunctive relief for Gemalto's past and on-going infringement of the Asserted Patents.

## THE PARTIES

3. Plaintiff StrikeForce Technologies, Inc. is a corporation organized and existing under the laws of the State of Wyoming, having its principal place of business located at 1090 King Georges Post Road, Edison, New Jersey 08837.

4. Upon information and belief, defendant Gemalto N.V. is a Dutch corporation organized under the laws of the Netherlands, having its principal place of business located at Barbara Strozzilaan 382, 1083 HN Amsterdam, Netherlands.

5. Upon information and belief, defendant Gemalto, Inc. is a corporation organized under the laws of the State of Delaware, having its principal place of business located at 9442 Capital of Texas Highway North, Suite 400, Austin, TX 78759, and is a wholly owned subsidiary of Gemalto, N.V.

6. Upon information and belief, defendant SafeNet, Inc. is a corporation organized under the laws of the State of Delaware, having its principal place of business located at 4690 Millennium Drive, Suite 400, Belcamp, MD 21017, and is a wholly owned subsidiary of Gemalto, Inc.

## JURISDICTION AND VENUE

7. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code §§ 1, *et seq.*

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. Upon information and belief, Defendant Gemalto maintains continuous and systematic contacts and directs its activities at residents of the Commonwealth of Massachusetts,

including through its operation of a regular and established business location at One Highwood Drive, Tewksbury, MA 01876.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a)-(c) and 1400(b).

## JOINDER

11. Upon information and belief, the right to relief asserted against each defendant in this Complaint arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, selling, offering for sale, and/or importing in the United States products, software, and/or services that incorporate or make use of one or more of the inventions covered by the Asserted Patents. Therefore, questions of fact common to all defendants will arise in this action, and joinder of each defendant under 35 U.S.C. § 299 is proper.

## STRIKEFORCE OUT-OF-BAND PATENTS AND PRODUCTS

12. U.S. Patent No. 7,870,599 (the "'599 patent"), titled "Multichannel Device Utilizing a Centralized Out-of-Band Authentication System (COBAS)," was duly and legally issued on January 11, 2011. StrikeForce Technologies, Inc. is the owner by assignment of all right, title, and interest in and to the '599 patent, including without limitation the right to sue and recover for past, current, and future infringement thereof.

13. U.S. Patent No. 8,484,698 (the "'698 patent"), titled "Multichannel Device Utilizing a Centralized Out-of-Band Authentication System (COBAS)," was duly and legally issued on July 9, 2013. The '698 patent is a continuation of, and claims priority to, the '599 patent. StrikeForce Technologies, Inc. is the owner by assignment of all right, title, and interest in and to the '698 patent, including without limitation the right to sue and recover for past infringement thereof. A copy of the '698 patent is attached as Exhibit A to this Complaint.

14.     U.S. Patent No. 8,713,701 (the "'701 patent"), titled "Multichannel Device Utilizing a Centralized Out-of-Band Authentication System (COBAS)," was duly and legally issued on April 29, 2014.  The '701 patent is a continuation of, and claims priority to, the '599 and '698 patents.  StrikeForce Technologies, Inc. is the owner by assignment of all right, title, and interest in and to the '701 patent, including without limitation the right to sue and recover for past infringement thereof.  A copy of the '701 patent is attached as Exhibit B to this Complaint.

15.     The inventions of the '698 and '701 patents are directed to multichannel security systems and methods for authenticating a user seeking to gain access to, for example, Internet websites and VPN networks, such as those used for conducting banking, social networking, business activities, and other online services.  This field of technology relates to what is sometimes referred to as "out-of-band" authentication, or a type of "two-factor" authentication.

16.     StrikeForce offers a product called ProtectID® that performs out-of-band authentication according to the teachings of one or more of the Asserted Patents.  StrikeForce has offered this product since August 2003, and ProtectID® has displayed the statutory patent notice for its issued patents at its website, www.strikeforcetech.com, since about February 2011.  In particular, StrikeForce's website identified the '599 patent at least as early as February 2011; StrikeForce's website identified the '698 patent at least as early as October 2013; and StrikeForce's website identified the '701 patent at least as early as June 2014.

17.     Upon information and belief, Gemalto has had actual knowledge of the '698 patent and the '701 patent at least as early as, and no later than, the filing of this Complaint.

## GEMALTO INFRINGING PRODUCTS

18. Upon information and belief, Gemalto offers two-factor authentication products for use on Android and iOS devices in the United States and in this District. These products include, but are not limited to, SafeNet Authentication Service, Ezio Suite, and MobileID.

19. Upon information and belief, Gemalto's SafeNet Authentication Service ("SAS") (using, for example, MobilePASS+) utilizes out-of-band ("OOB") technology that sends a notification to the user's device when a login request is made to provide two-factor authentication with a mobile phone. SAS can be used with RADIUS or SAML servers for receiving and authenticating requests for access to computers, including web applications. When a user wants to access a protected application, the user's request is redirected to SAS, which sends a push notification out-of-band to the user's mobile device requesting authorization. When the push notification arrives on the user's mobile device, the user can respond to the request directly on the push notification, or tap on the notification to load additional request details within the MobilePASS+ application and/or tap to approve the login request, or log in using a fingerprint sensor. Approval automatically triggers delivery of a one time password ("OTP") to SAS through an OOB channel. Once the OTP authentication is validated by SAS, access to the requesting application will be granted. *See, e.g.*, Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G; Exhibit H. An exemplary diagram showing this process, available at http://www2.gemalto.com/sas/mobilepass-plus-push-authentication.html (last visited Mar. 10,

2017), is reproduced below.



20. Upon information and belief, SAS is designed to integrate with third-party applications that deploy multifactor authentication options using MobilePASS+ managed by SAS. Gemalto provides documentation and instructions for integrating Push OTP with third-party applications including, but not limited to, applications provided by Blue Coat, Check Point, Cisco, Citrix, F5, Pulse Secure, and SonicWall. *See, e.g.*, Exhibit G at 11.

21. Upon information and belief, the Ezio Mobile Secure Messenger includes an out-of-band messaging server and mobile SDK to send and receive messages, including authentication requests and transaction verifications, to targeted groups or individuals. It enables the establishment of a secure channel between a company's information/authentication systems and the mobile application. *See, e.g.*, Exhibit I; Exhibit J. Ezio's mobile authentication includes biometric authentication, such as fingerprint and facial recognition. *See, e.g.*, Exhibit K; Exhibit L. Exemplary diagrams showing this process, available at http://www.gemalto.com/brochures-site/download-site/Documents/eba_ezio_out_of_band.pdf (last visited Mar. 10, 2017), are reproduced below:



22.     Upon information and belief, Gemalto's Ezio Suite, including Ezio Mobile Secure Messenger, can be used in conjunction with Gemalto's clients' existing authentication infrastructure or delivered with the complete Ezio Mobile Protector and Confirmation Authentication Server to build a comprehensive security solution.  *See, e.g.*, Exhibit I at 4.

23.     Upon information and belief, Gemalto's MobileID is a service designed for operators willing to provide their subscribers with a Digital Identity.  It enables secure online authentication for users with a click-OK on a mobile phone.  Exhibit M.  As Gemalto explains in its promotional videos, available at https://www.youtube.com/watch?v=ban7Y7UrWfs&t=77s

(last visited Mar. 10, 2017), a user "just has to enter his mobile phone number as his unique username and tap the OK button on his handset":



## COUNT I – INFRINGEMENT OF THE '698 PATENT

24. StrikeForce incorporates by reference the averments set forth in paragraphs 1 through 23.

25. Pursuant to 35 U.S.C. § 271(a), Gemalto has directly infringed and is continuing to directly infringe the '698 patent by making, using, selling, offering for sale, and/or importing in the United States and in this District products, software, and/or services that incorporate or make use of one or more of the inventions covered by the '698 patent, including, but not limited to, systems incorporating SafeNet Authentication Service ("SAS") (using at least MobilePASS+), Ezio Mobile Suite, and/or MobileID (collectively, the "Infringing Products"), thereby directly infringing one or more claims of the '698 patent.

26. Upon information and belief, and as demonstrated by paragraphs 1 through 23 and the supporting exhibits to this Complaint, the Infringing Products satisfy each and every element of one or more claims of the '698 patent, for example, and without limitation, claim 1 of the '698 patent.

27. For example, and without limitation, the Infringing Products comprise software for employing a multichannel security system to control access to a computer (*e.g.*, software-based authentication platform of SAS or Ezio). *See, e.g.*, Exhibit C at 6; Exhibit D at 6. The Infringing Products receive at an interception device in a first channel a login identification demand to access a host computer also in the first channel (*e.g.*, an element of the system that intercepts the user's login request prior to granting access to the protected information in, for example, the computer or application). *See, e.g.*, Exhibit C at 6; Exhibit D at 6; Exhibit E at 5. The Infringing Products verify the login information (*e.g.*, by verifying the login information of the user). *Id.* The Infringing Products receive at a security computer in a second channel (*e.g.*, SAS or Ezio server) the demand for access and the login identification and output a prompt requesting transmission of data (*e.g.*, push notification to user's mobile device requesting user to confirm or deny authorization). *See, e.g.*, Exhibit F at 1. The Infringing Products receive the transmitted data at the security computer, compare the transmitted data to predetermined data, and depending on the comparison of the transmitted and the predetermined data, output an instruction from the security computer to the host computer to grant access to the host computer or deny access thereto (*e.g.*, SAS or Ezio server receive the user's response and outputs an instruction to the protected computer to grant or deny access to the requested protected computer or application based on that response). *See, e.g.*, Exhibit C at 6; Exhibit F at 1; Exhibit G at 9.

28. Gemalto has, under 35 U.S.C. § 271(b), indirectly infringed, and continues to indirectly infringe the '698 patent by, *inter alia*, inducing others to make, use, sell, offer for sale, and/or import into the United States the Infringing Products, and distributing, marketing, and/or advertising those products and web services covered by the '698 patent in this District and elsewhere in the United States. *See, e.g.*, *supra* ¶¶ 18−23.

29. Gemalto has, under 35 U.S.C. § 271(c), indirectly infringed, and continues to indirectly infringe the '698 patent by, *inter alia*, knowingly providing to its customers the Infringing Products, which constitute material components of an out-of-band authentication system and that was especially made or adapted for use in that system, which are not staple articles or commodities of commerce and which have no substantial, non-infringing use.

30. Gemalto puts the Infringing Products into service and exercises control over said systems.

31. Gemalto had and/or has knowledge of the '698 patent, at least as early as the filing of this Complaint.

32. Gemalto's customers directly infringe one or more claims of the '698 patent by, for example, integrating the claimed systems and methods directly into the customers' web services and directly benefitting from the use of those systems. For example, Gemalto's customers in the United States and in this District utilize the two-factor authentication system claimed in the '698 patent for the purpose of gaining secure access to, exemplarily, various Internet websites and other secure networks.

33. Upon information and belief, Gemalto knowingly provides its customers with products and web services that are used in a manner that infringes one or more claims of the '698 patent.

34. Upon information and belief, through its marketing activities, instructions and directions, and through the sales and offers for sale of infringing systems and methods, Gemalto specifically intends for, and/or specifically encourages and instructs, its customers to use its products and web services and knows that its customers are using its products and web services in an infringing manner.

35. As a direct and proximate result of Gemalto's acts of infringing one or more claims of the '698 patent, StrikeForce has suffered injury and monetary damages for which StrikeForce is entitled to relief in the form of damages for lost profits and in no event less than a reasonable royalty to compensate for Gemalto's infringement.

36. Gemalto will continue to directly infringe one or more claims of the '698 patent, causing immediate and irreparable harm to StrikeForce unless this Court enjoins and restrains Gemalto's activities, specifically the acts of making, using, selling, and offering for sale, as previously outlined. There are inadequate remedies available at law to compensate for this harm.

37. Upon information and belief, Gemalto has knowingly, willfully, and deliberately infringed one or more claims of the '698 patent in conscious disregard of StrikeForce's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

## COUNT II – INFRINGEMENT OF THE '701 PATENT

38. StrikeForce incorporates by reference the averments set forth in paragraphs 1 through 37.

39. Pursuant to 35 U.S.C. § 271(a), Gemalto has directly infringed and is continuing to directly infringe the '701 patent by making, using, selling, offering for sale, and/or importing in the United States and in this District products, software, and/or services that incorporate or

make use of one or more of the inventions covered by the '701 patent, including, but not limited to, the Infringing Products, thereby directly infringing one or more claims of the '701 patent.

40. Upon information and belief, and as demonstrated by paragraphs 1 through 37 and the supporting exhibits to this Complaint, the Infringing Products satisfy each and every element of one or more claims of the '701 patent, for example, and without limitation, claim 1 of the '701 patent.

41. For example, and without limitation, the Infringing Products comprise a security system for accessing a host computer (*e.g.*, software-based authentication platform of SAS or Ezio). *See, e.g.*, Exhibit C at 6; Exhibit D at 6. The Infringing Products include an access channel comprising an interception device for receiving a login identification originating from an accessor for access to said host computer (*e.g.*, an element of the system that intercepts the user's login request prior to granting access to the protected information in, for example, the computer application). *See, e.g.*, Exhibit C at 6; Exhibit D at 6; Exhibit E at 5. The Infringing Products include, in an authentication channel, a security computer (*e.g.*, SAS or Ezio server) for receiving from said interception device said login identification and for communicating access information to said host computer and for communicating with a peripheral device of said accessor (*e.g.*, push notification to user's mobile device requesting user to confirm or deny authorization). *See, e.g.*, Exhibit C at 6; Exhibit D at 6; Exhibit E at 5. The Infringing Products include a database having at least one peripheral address record corresponding to said login identification (*e.g.*, database accessed by SAS or Ezio for communicating with the user's mobile device). *See, e.g.*, Exhibit C at 6. The Infringing Products include, in an authentication channel, a prompt mechanism for instructing said accessor to enter predetermined data at and transmit said predetermined data from said peripheral device (*e.g.*, an element of the system that issues a

push notification on the user's mobile device prompting the user to confirm or deny authorization). *See, e.g.*, Exhibit C at 6; Exhibit F at 1; Exhibit H at 43-44. The Infringing Products include, in an authentication channel, a comparator for authenticating access demands in response to the transmission of said predetermined data by verifying a match between said predetermined data and said entered and transmitted data, wherein said security computer outputs an instruction to the host computer to either grant access thereto using said access channel or to deny access thereto (*e.g.*, SAS or Ezio receives the user's response and outputs an instruction to the protected computer to grant or deny access to the requested protected computer or application based on that response). *See, e.g.*, Exhibit C at 6; Exhibit F at 1; Exhibit G at 9; Exhibit H at 43-44.

42. Gemalto has, under 35 U.S.C. § 271(b), indirectly infringed, and continues to indirectly infringe the '701 patent by, *inter alia*, inducing others to make, use, sell, offer for sale, and/or import into the United States the Infringing Products, and distributing, marketing, and/or advertising those products and web services covered by the '701 patent in this District and elsewhere in the United States. *See, e.g.*, *supra* ¶¶ 18−23.

43. Gemalto has, under 35 U.S.C. § 271(c), indirectly infringed, and continues to indirectly infringe the '701 patent by, *inter alia*, knowingly providing to its customers the Infringing Products, which constitute material components of an out-of-band authentication system and that was especially made or adapted for use in that system, which are not staple articles or commodities of commerce and which have no substantial, non-infringing use.

44. Gemalto puts the Infringing Products into service and exercises control over said systems.

45. Gemalto had and/or has knowledge of the '701 patent, at least as early as the filing of this Complaint.

46. Gemalto's customers directly infringe one or more claims of the '701 patent by, for example, integrating the claimed systems and methods directly into the customers' web services and directly benefitting from the use of those systems. For example, Gemalto's customers in the United States and in this District utilize the two-factor authentication system claimed in the '701 patent for the purpose of gaining secure access to, exemplarily, various Internet websites and other secure networks.

47. Upon information and belief, Gemalto knowingly provides its customers with products and web services that are used in a manner that infringes one or more claims of the '701 patent.

48. Upon information and belief, through its marketing activities and through the sales and offers for sale of infringing systems and methods, Gemalto specifically intends for, and/or specifically encourages and instructs its customers to use its products and web services and knows that its customers are using its products and web services in an infringing manner.

49. As a direct and proximate result of Gemalto's acts of infringing one or more claims of the '701 patent, StrikeForce has suffered injury and monetary damages for which StrikeForce is entitled to relief in the form of damages for lost profits and in no event less than a reasonable royalty to compensate for Gemalto's infringement.

50. Gemalto will continue to directly infringe one or more claims of the '701 patent, causing immediate and irreparable harm to StrikeForce unless this Court enjoins and restrains Gemalto's activities, specifically the acts of making, using, selling, and offering for sale, as previously outlined. There are inadequate remedies available at law to compensate for this harm.

51. Upon information and belief, Gemalto has knowingly, willfully, and deliberately infringed one or more claims of the '701 patent in conscious disregard of StrikeForce's rights, making this case exceptional within the meaning of 35 U.S.C. § 285 and justifying treble damages pursuant to 35 U.S.C. § 284.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Gemalto as follows:

A. Declaring that the '698 patent was duly and legally issued, and is valid and enforceable;

B. Declaring that the '701 patent was duly and legally issued, and is valid and enforceable;

C. Declaring that Defendant Gemalto has infringed the '698 patent;

D. Declaring that Defendant Gemalto has willfully infringed the '698 patent;

E. Declaring that Defendant Gemalto has infringed the '701 patent;

F. Declaring that Defendant Gemalto has willfully infringed the '701 patent;

G. Awarding to Plaintiffs damages caused by Defendant Gemalto's infringement, including all lost profits resulting from Gemalto's acts of infringement, and in no event less than reasonable royalties, together with pre-judgment and post-judgment interest and supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, pursuant to 35 U.S.C. § 284;

H. Awarding to Plaintiffs treble damages for infringement of the '698 and '701 patents as a consequence of Defendant Gemalto's willful infringement;

I. Enjoining Gemalto, its officers, agents, servants, employees, attorneys, all parent and subsidiary corporations and affiliates, its assigns and successors in interest, and those persons in active concert or participation with Gemalto who receive notice of the injunction, from continuing acts of infringement of the '698 and '701 patents;

J. Ordering that, in the event a permanent injunction preventing future acts of infringement is not granted, Plaintiffs be awarded a compulsory ongoing license fee;

K. Adjudging this an exceptional case and awarding to Plaintiffs their reasonable attorneys fees pursuant to 35 U.S.C. § 285; and

L. Awarding to Plaintiff StrikeForce such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b), Fed. R. Civ. P., Plaintiffs demand a trial by jury on all of the claims so triable.

Respectfully submitted,

Dated:  March 14, 2017

By: /s/ *Dalila Argaez Wendlandt*
Dalila Argaez Wendlandt (BBO # 639280)
Samuel L. Brenner (BBO # 677812)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
*Dalila.Wendlandt@ropesgray.com*
*Samuel.Brenner@ropesgray.com*
Tel.: (617) 951-7000

Richard T. McCaulley, Jr. (*pro hac vice pending*)
ROPES & GRAY LLP
191 North Wacker Drive
32nd Floor
Chicago, IL 60606
*Richard.McCaulley@ropesgray.com*
Tel.: (312) 845-1200

Steven Pepe (*pro hac vice pending*)
Kevin J. Post (*pro hac vice pending*)
Josef B. Schenker (*pro hac vice pending*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
*Steven.Pepe@ropesgray.com*
*Kevin.Post@ropesgray.com*
*Josef.Schenker@ropesgray.com*
Tel.: (212) 596-9000

*Attorneys for Plaintiff StrikeForce Technologies, Inc.*